UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JELANI AKEEM BIGSBY,<br><br>                          Petitioner,<br><br>v.<br><br>JOE A. LIZARRAGA,<br><br>                          Respondent. | Case No.:  15cv1452 BEN (KSC)<br><br>**ORDER:**<br><br>**(1) ADOPTING REPORT AND RECOMMENDATION; and**<br><br>**(2) DENYING PETITION**<br><br>[Docket Nos. 1, 13] |

Petitioner Jelani Akeem Bigsby ("Petitioner"), a state prisoner proceeding *pro se* and *in forma pauperis*, commenced this action with the filing of a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1).  Petitioner was convicted on August 25, 2011 of four counts of first degree robbery, one count of burglary, and four counts of assault with a firearm.  Petitioner asserts four bases for habeas relief: (1) insufficient evidence to support the robbery convictions as to two victims; (2) an unduly suggestive line-up and improper in-court identification; (3) ineffective assistance of counsel; and (4) prosecutorial misconduct regarding statements made by the prosecutor at trial.

1  Respondent filed an Answer and Petitioner filed a Traverse. (Docket Nos. 10, 12.)
2  Magistrate Judge Karen S. Crawford issued a thoughtful and thorough Report and
3  Recommendation recommending that the Petition be denied. (Docket No. 13.)
4  Objections to the Report were timely filed. (Docket No. 14.)

5  A district judge "may accept, reject, or modify the recommended disposition" of a
6  magistrate judge on a dispositive matter. Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. §
7  636(b)(1). "The district judge must determine de novo any part of the [report and
8  recommendation] that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

9  For the reasons that follow, the Objections are overruled, the Report is
10 **ADOPTED**, and the Petition is **DENIED**.

## BACKGROUND

The following factual findings are drawn from the California Court of Appeals decision.

> Marco Ibanez, his wife, Elva Ibanez, their 18-year-old daughter, Jacqueline Ibanez, and her 19-year-old friend, Eva Gomez, lived in a home located in San Diego [ .... ] On the afternoon of September 4, the home was burglarized. The burglar stole Jacqueline's and Eva's laptop computers; an envelope of money that Elva kept inside a drawer and attempted to pry open a floor safe.
>   The following morning, defendants entered the home while a cohort waited outside in a vehicle. Defendants, armed with semiautomatic handguns, confronted Marco and threatened to kill him if he did not give them the money from his safe. Marco put the cash from the safe into Ortega's [co-defendant] backpack. Ortega then had Marco give him the money hidden in dresser drawers. Defendants stole about $25,000 in cash from the safe and dresser drawers.
>   In the meantime, Elva ran into the nearby bedroom shared by Jacqueline and Eva, locked the door and told them to call 911. Eva hid in the closet and called 911 from her cellular phone. Jacqueline also called 911. Bigsby broke into the room while Jacqueline was on the phone, pointed his gun at her saying, "You better not be calling the

cops." Bigsby motioned with his gun for Jacqueline and Elva to kneel on the floor.

At one point, Jacqueline heard Marco struggling to open the safe, so she told Bigsby that she could open the safe. When Bigsby asked Jacqueline if she could guarantee that she would be able to open the safe, her mind went blank. Eventually, Eva came out of the closet and Bigsby had her sit next to the other women as he pointed his gun at all of them. Bigsby grabbed Jacqueline's phone, Eva's phone, and another phone that was on a shelf and threw them to the floor, breaking them. When the police arrived defendants escaped by jumping out a window.

Petitioner was convicted of four counts of first degree robbery, one count of burglary, and four counts of assault with a semi-automatic firearm. The jury additionally found Petitioner used a firearm in the commission of the crime.

On direct appeal, Petitioner argued the evidence did not support his conviction on two of the robbery counts. The California Court of Appeal rejected the claim and affirmed the conviction. The California Supreme Court summarily denied the appeal.

Petitioner then sought state collateral review raising the following claims: (1) unconstitutionally suggestive line-up and in-court identification; (2) ineffective assistance of trial counsel; (3) prosecutorial misconduct for remarks during closing argument; (4) cumulative error; (5) ineffective assistance of appellate counsel for failing to raise these issues on direct appeal. The Superior Court denied the petition. Petitioner then sought review from the California Court of Appeal and the writ was denied in a written opinion. Finally, Petitioner raised the same issue before the California Supreme Court and the writ was summarily denied.

## DISCUSSION

As outlined in the Report, federal habeas relief may only be granted when state court proceedings "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court decision is 'contrary to clearly established Federal law' if 'the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.'" *Mays v. Clark*, 807 F.3d 968, 977 (9th Cir. 2015) (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). "A state court decision is an 'unreasonable application of clearly established federal law' if 'the state court correctly identifies the governing legal principle ... but unreasonably applies it to the facts of the particular case.'" *Id.* (quoting *Bell*, 535 U.S. at 694). The Supreme Court has clarified that even an erroneous or incorrect application of clearly established federal law does not support a grant of habeas relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Only when the state court's application was "objectively unreasonable" is relief available. *Id.* Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805–06 (1991).

## I.      Insufficient Evidence

Petitioner argues in his objections that the evidence was not sufficient to establish that Jacqueline Ibanez or Eva Gomez had constructive possession of the stolen property to support his robbery convictions as to each.

The Report correctly explains that to grant relief on this claim, the Court would have to find that the state court's application of *Jackson v. Virginia* — relief only available when "it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt" — was itself objectively unreasonable. *Boyer v. Bellequ*, 659 F.3d 957, 964 (9th Cir. 2011) (citing *Juan H. v. Allen*, 408 F.3d 1262, 1275 n.13 (9th Cir. 2005) and quoting *Jackson v. Virginia*, 443 U.S. 307, 324 (1979)). This "double dose of deference . . . can rarely be surmounted." *Id.*

The Report also accurately identifies the elements of the offense as required for the *Jackson* analysis, including the one Petitioner raises here — possession of the property in question. "[N]either ownership nor physical possession is required to establish the element of possession for purposes of the robbery statute." *People v. Scott*, 45 Cal. 4th 743, 750 (2009). As explained in more detail in the Report, "a victim can be any person who shares 'some type of special relationship with the owner of the property sufficient to demonstrate that the victim had authority or responsibility to protect the stolen property on behalf of the owner.'" *People v. Weddles*, 184 Cal. App. 4th 1365, 1369 (3d Dist. 2010) (quoting *Id.* at 753).

### A. Jacqueline Ibanez

The California Court of Appeal found there was substantial evidence of Jacqueline's constructive possession to support the robbery conviction, including that she was an adult, living in her parents' home with a key to the residence, and that she had knowledge of the floor safe robbed and its combination. The Report finds the California Court of Appeals decision was not contrary to, nor an unreasonable application of clearly established Supreme Court precedent because a reasonable jury could conclude Jacqueline has constructive possession based on the evidence noted above.

Petitioner argues in his objections that a reasonable jury could not conclude Jacqueline had constructive possession of the stolen property because she was not exercising dominion over it when it was stolen; she did not own the residence being robbed; she was not a co-owner of the stolen property; and her familial relationship alone was not sufficient to establish constructive possession.[1] The Court disagrees.

---

[1] Petitioner argues that a familial relationship alone is not sufficient to support constructive possession, however, neither the Court of Appeals decision nor the Report relied solely on a familial relationship. Similarly, neither relies solely on shared residence or knowledge of the property's location as Petitioner asserts. Rather, as

5

In *Weddles*, the victim found to have constructive possession did not own the residence being robbed, was not a co-owner of the property stolen, and did not live at the residence. *Id.* at 1371. Petitioner argues this case is distinguishable because the *Weddles* victim was taken by the defendants to his brother's room to identify the location of his brother's hidden money and here, Jacqueline was not. However, the court did not rely on that fact in finding constructive possession. The court found constructive possession existed because of the "close familial relationship with the owner of the property, his regular presence at the apartment, and knowledge of where the property was hidden." *Id.* Here, the connection between Jacqueline and the stolen property is even stronger. In addition to the close familial relationship with the owner of the property and knowing where the property was hidden, she lived in and had a key to the home (more than being a frequent visitor), and had the combination to the safe.

**B. Eva Gomez**

The California Court of Appeals found substantial evidence supported constructive possession based on evidence Eva was Jacqueline's best friend, considered a family member, had been living in the home and sharing a room with Jacqueline (with empty rooms in the house available) for one year, and that she was present when the police investigated the burglary the day before — allowing a jury to infer she knew about the safe and money in dresser drawers. The Report finds the California Court of Appeals decision was not contrary to, nor an unreasonable application of clearly established Supreme Court precedent because a reasonable jury could conclude Jacqueline had constructive possession based on the above evidence.

---

explained below, both looked at the collective evidence supporting the requisite special relationship for constructive possession.

Petitioner argues in his objections that Eva was no more than a roommate to Marco and Elva Ibanez, like the victim found to lack constructive possession in *People v. Ugalino*. 174 Cal. App. 4th 1060 (3d Dist. 2009). However, as explained in the Report, the relationship between the roommate and the property owner in *Ugalino* and Eva and Marco and Elva here are distinguishable in many respects. The roommate in *Ugalino* was only a roommate. He had been living in the apartment for only three to four months, did not even have a key to the apartment, and did not have access to the safe containing the marijuana defendants were attempting steal. Here, Eva was Jacqueline's best friend and had been living with Marco and Elva for a year. She was considered part of the family. She shared a room with Jacqueline across the hall from Marco and Elva even though there were two vacant rooms in the house. If she were a roommate, she would have occupied her own space in a separate and available room. She also used Marco's vehicles. Additionally, Eva was present during the police investigation regarding the initial robbery when the burglar attempted to open the safe and successfully stole money from a dresser drawer, from which a jury could infer she had knowledge of the eventually stolen property's existence and location of the floor safe.

The Court agrees with the Report's conclusion that the California Court of Appeals decision on the sufficiency of the evidence in support of constructive possession is not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. Petitioner's objections on the sufficiency of the evidence are overruled.

## II.   Petitioner's Identification

The California Court of Appeal rejected Petitioner's challenges to his identification by Jacqueline in an out-of-court line up and later in court and found specifically as to the line-up that he failed to establish it was unduly suggestive or otherwise unreliable under the totality of the circumstances. The Report found the line-up procedures were not suggestive and the in-court identification proper given the prior out-of-court identification. The Report also notes the extensive cross examination of Jacqueline

concerning her identification of Petitioner.  The Report found the California Court of Appeal decision was not contrary to or an unreasonable application of established Supreme Court precedent.

Petitioner objects that his line-up was unduly suggestive because the difference in his skin color from others was not de minimis and his voice stood out from the others. He also objects that Jacqueline's in-court identification of him created a substantial likelihood of misidentification.  The Court disagrees.

As explained in the Report, the record does not reflect the line-up was impermissibly suggestive because of differences between Petitioner and the others in the line-up with regard to height, skin color, or voice.  The Court agrees with the Report's conclusion that the differences in skin color (photographs in the record) and height (within an inch of all but one individual) were minimal.  Jacqueline's comment that she thought he was faking his voice does not reflect the procedures utilized were unduly suggestive, particularly when the jury heard the entire line-up, including those in it speaking, and heard Petitioner testify.  Additionally, as noted in the Report, if his voice were so unusual as to make him stand out, it is odd that the other three witnesses did not identify him on that same basis.

As to the substantial likelihood of irreparable misidentification, the Court agrees with the Report that there is no basis for it given that Jacqueline had previously identified Petitioner in the out-of-court line-up and Jacqueline's identification of Petitioner was subjected to extensive cross examination at trial.

Petitioner's objections as to his identifications are overruled.

### III. Ineffective Assistance of Counsel

The California Court of Appeal found Petitioner's ineffective assistance of counsel claims were nothing more than speculation that use of an expert or further investigation would have made a difference at trial.  The Report reaches the same conclusion, finding specifically that the record reflects counsel did investigate Petitioner's alibi witnesses and

that Petitioner failed to identify how more investigation would have impacted his trial. The Report also finds Petitioner failed to demonstrate his counsel's method of attacking the DNA evidence was below that of a competent attorney. Finally, as to the absence of a medical expert to interpret Petitioner's medical records, the Report found the medical records presented to the jury were in plain language. No expert was needed. Additionally, the Report notes Petitioner's counsel also presented other witnesses to address Petitioner's practical physical limitations. The Report finds the California Court of Appeals acted reasonably in denying Petitioner's ineffective assistance of counsel claims.

Petitioner argues in his objections that his trial counsel failed to properly investigate a witness in advance of trial, failed to consult an expert regarding the proper basis to attack DNA evidence, failed to introduce expert testimony on Petitioner's injuries, and failed to use available records to refresh an alibi witness' recollection and corroborate that alibi witness' testimony.

As the Report correctly explains, under *Strickland v. Washington*, a petitioner must demonstrate that: (1) defense counsel's performance was deficient; and (2) this deficient performance was prejudicial. 466 U.S. 668, 690-92 (1984). Because of the difficulties inherent in evaluating the performance of counsel after the fact, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. On federal habeas review, this Court must take "a 'highly deferential' look at counsel's performance through the 'deferential lens of § 2254(d).'" *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *id.* at 689 and *Knowles v. Mirzayance*, 556 U.S 111, 121 n.2 (2009). It is a doubly deferential standard. *Harrington*, 562 U.S. at 105. "The question 'is not whether a federal court believes the state court's determination under the *Strickland* standard 'was incorrect, but whether that determination was unreasonable—a substantially higher threshold." *Mirzayance*, 556 U.S. at 123. "Put differently, [the court] ask[s] not 'whether counsel's actions were

reasonable' but 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Hibbler v. Benedetti*, 693 F.3d 1140, 1150 (9th Cir. 2012).

As to the objection concerning consulting a DNA expert, the Court agrees with the Report's conclusion that Petitioner failed to present any evidence his trial counsel failed to consult with a DNA expert or that such consultation would have altered the outcome at trial.

Petitioner's objection concerning investigation of an alibi witness seems to shift from arguing a lack of investigation of a witness (record reflects there was an investigation) to arguing, with the benefit of hindsight, that counsel might have used information (cell phone records) differently in presenting the alibi witness.  He argues counsel should have used them to jog the witness' memory and to corroborate the witness' version of events.  However, this is just the sort of "all too tempting . . . second guessing [of] counsel's assistance after conviction" in which the Court may not engage on federal habeas review.  *Strickland*, 466 U.S. at 689.  Similarly, Petitioner argues his counsel should have objected to improper statements the prosecutor made during closing argument, discussed later under prosecutorial misconduct.  However, "because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the wide range of permissible professional legal conduct." *Cunningham v. Wong*, 704 F.3d 1143, 1159 (9th Cir. 2013) (quoting *United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993) and noting counsels' "decision not to object to . . . comments, possibly to avoid highlighting them, was a reasonable strategic decision").

As to counsel not calling a medical expert to offer an opinion on whether Petitioner's injuries would have prevented him from escaping from the home out the window, the Court agrees with the Report that counsel's decision to call or not call an

expert is one of trial tactics this Court should not second-guess, particularly when other evidence addressed the issue. This itself exemplifies the complete absence of any showing of prejudice. Petitioner's medical records were provided to the jury and written in plain language describing Petitioner's physical limitations and counsel presented two witnesses that testified to Petitioner's physical limitations.

The Court finds Petitioner has not met the high standard set for ineffective assistance of counsel claims and agrees with the Report that the California Court of Appeal acted reasonably in denying this claim. Petitioner's objections on his ineffective assistance of counsel claims are overruled.

**IV.     Prosecutorial Misconduct**

The California Court of Appeal found, assuming the claims of prosecutorial misconduct were valid, the Petitioner failed to establish that the statements impacted the determination of his guilt. The Report, also assuming any of counsel's comments were improper, were so fleeting they did not rise to a constitutional violation. The Report also found the only error the prosecutor committed — suggesting on cross examination of Petitioner on his alibi that he had given a contrary story to a detective — was corrected by a stipulation.

Petitioner objects that the Report failed to address the prosecutorial misconduct as to inaccurate statements made about DNA results during closing argument. Additionally, Petitioner asserts that the prosecutor's attack on Petitioner's story (his alibi) during closing statements were inflammatory and improper.

Petitioner objects that the Report should have addressed his claim of prosecutorial misconduct as to statements made during closing argument about DNA results because Petitioner only conceded harmless error as to the prosecutor's comments on the same during Petitioner's examination, not during closing. However, even if the Court assumes Petitioner did not concede harmless error as to the prosecutor's closing argument statement as to DNA results and assumes there were misstatements, the Court

finds is did not render the trial fundamentally unfair. Even if combined with the comments about Petitioner's credibility in the context of attacking the truth of his version of events in closing argument (assuming there was something improper about that) it collectively did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 447 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

Petitioner's objections on his prosecutorial misconduct claim are overruled.

## V. Certificate of Appealability

Because Petitioner has not "demonstrate[d] that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; *or* that the questions are adequate to deserve encouragement to proceed further," a certificate of appealability is **DENIED**. *Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000).

## CONCLUSION

The Report and Recommendation is **ADOPTED** over Petitioner's Objections. The Petition is **DENIED**. The Clerk shall close the case.

**IT IS SO ORDERED.**

Dated: August 29, 2016

Hon. Roger T. Benitez
United States District Judge